Argued March 8; reversed March 22, 1938

# VROMAN *v.* UPP
### (77 P. (2d) 432)

Department 2.

*Porter J. Neff*, of Medford (Neff & Frohnmayer, of Medford, on the brief), for appellant.

*W. M. McAllister*, of Medford (G. M. Roberts, of Medford, on the brief), for respondent.

BAILEY, J. The plaintiff, C. D. Vroman, appeals from a judgment rendered on a verdict in favor of the defendant, Louis J. Upp. According to the undisputed facts, a collision occurred at the intersection of North Central avenue and Fourth street in the city of Medford, between an automobile driven by Judd Doty and one driven by the defendant. Doty was proceeding in a northerly direction on North Central avenue and after entering the said intersection his car was struck, at or near the left rear wheel, by the car of the defendant, who was proceeding in an easterly direction. The impact threw the Doty car out of its course and into and against the car driven by the plaintiff. At the time of the

mishap the plaintiff was driving in a southerly direction on North Central avenue and, apprehensive of a collision between the defendant's and Doty's cars, had slowed his own car almost to a stop approximately 75 feet north of the intersection. The collision of the Doty car with plaintiff's car is alleged to have caused severe injuries to plaintiff and demolished his automobile. Action was brought by the plaintiff against Upp only.

In the complaint are set forth two causes of action, one for the injury suffered by the plaintiff and the other for damage to his automobile. After alleging in general terms that the injury to the plaintiff and the damage to his car were due solely to the negligence, carelessness and recklessness of the defendant in entering the intersection and colliding with the Doty automobile, the complaint specifies negligence on the part of the defendant in the following particulars:

"(1) In driving said Terraplane sedan upon said street at a speed greater than was reasonable and prudent, having due regard to the traffic, surface and width of said street and the hazard at said intersection and other conditions then existing, and at a speed in excess of 40 miles per hour.

"(2) In failing to keep a proper or any lookout for other traffic using said streets and particularly said Buick coupe [the Doty car] and the said DeSoto sedan [plaintiff's automobile].

"(3) In failing to yield the right of way to said Doty who was proceeding carefully and prudently at a lawful rate of speed and had entered said intersection before the defendant.

"(4) In failing, neglecting and refusing to keep his automobile under proper or any control so as to be able to stop or otherwise avoid running into said Doty's said Buick coupe.

"(5) In operating his said automobile upon said street carelessly and heedlessly in wilful and wanton

disregard of the rights and safety of other persons and vehicles using said streets and particularly of the plaintiff and his automobile.''

The defendant denies the allegations of negligence, avers that the collision was caused solely by the carelessness, recklessness and negligence of Doty, and charges to Doty the same acts of negligence that plaintiff attributes to the defendant. The allegations imputing negligence to Doty are denied by the reply.

There are no acts of negligence or contributory negligence charged to the plaintiff, for the apparent reason that he was in nowise connected with the collision between the defendant's automobile and Doty's.

Only three assignments of error are discussed in the appellant's brief. Two of these are based on the refusal of the court to give certain instructions requested by the plaintiff, and the third assignment of error is predicated on the exception taken to one of the instructions given by the court.

We shall first consider the last-mentioned assignment of error. The court, after instructing the jury that the law ''provides that the drivers of motor vehicles when approaching a highway intersection shall look out for and give way—and give right of way to vehicles on the right simultaneously approaching a given point, whether such vehicle first entered and reached the intersection or not,'' continued its charge to the jury as follows:

'' 'Right of way' is defined as being the privilege of the immediate use of the highway. Now, under this definition, the law regarding who has the right of way in an intersection first provides that the drivers of motor vehicles when approaching a highway intersection shall look out for oncoming traffic and so forth.

"Now, of course, that means that they must use the natural faculty of sight to such extent and in such manner as a person of ordinary care and prudence would do under like conditions and circumstances, and any person of ordinary care and prudence approaching such an intersection with the intention of entering upon it should have looked to the right or to the left—he would have looked to the right or to the left, or both. That is the duty that is imposed upon the person so entering an intersection, and in that event, if it is his duty to look to the right or to the left, or both ways, it is his duty then, of course, to see the things that were plainly visible to him—plainly apparent if he had looked, and he would be charged, of course, with those things that were plainly visible, if he had looked and failed to do so, but the yardstick by which we measure that duty, as well as the duty in regard to negligence— any other kind of negligence or any other act of negligence—the yardstick by which we measure is what a person of ordinary care and prudence would have done under like conditions and circumstances, because that always becomes the duty of the person whose act is in question to act in that manner and to use those precautions, whatever they may be, that a person of ordinary care and prudence would have used under like conditions and circumstances, and if he fails to do so then, of course, he is negligent, and if that negligence is the proximate cause of injury to any person, or is the proximate cause in connection with some other act of negligence, both producing the proximate cause, is negligence accordingly."

The plaintiff's exception to the foregoing instruction is thus worded:

"And plaintiff excepts to the instruction of the court which in effect did advise the jury that the extent of the duties of one entering an intersection from the left, to have his car under control and his duty to look to the right for oncoming traffic was that which would be used by a person of ordinary care and prudence, it being the contention of the plaintiff that the duties in

that respect evolving on such person are fixed by statute.''

This exception taken by the plaintiff is somewhat clarified when we consider one of the instructions requested by the plaintiff and refused by the court to be given in the language suggested, which refusal is the basis of one of the assignments of error. By that requested instruction the court was asked to charge the jury that the driver of a car approaching an intersection from the left was required to look to the right "in an endeavor to apprise himself of the presence of all cars approaching the intersection from that direction; their distance from the point of passage, and their rates of speed."

Oregon Laws 1935, chapter 124, § 1, subdivision *a* (Oregon Code Supplement 1935, § 55-2311), provides as follows: "Drivers, when approaching highway [which term includes streets: § 55-101, Oregon Code 1930] intersections, shall look out for and give right of way to vehicles on the right, simultaneously approaching a given point, whether such vehicle first enter and reach the intersection or not; * * * Any driver entering an intersection at an unlawful speed shall forfeit any right of way which he would otherwise have under this subdivision." It is the contention of the plaintiff that the foregoing provision of the statute imposes upon the driver of an automobile approaching an intersection the duty to look to the right to ascertain whether there are any cars entering or about to enter the intersection on the driver's right, or, in the words of the statute, "simultaneously approaching a given point"; and that the trial court in its instruction to the jury ignored this duty enjoined on the disfavored

driver and substituted for such duty the care of an ordinarily prudent person.

Even though the trial judge might not have intended by the foregoing instruction to tell the jury that the defendant was required to use only the care which anyone of ordinary prudence would use under like conditions and circumstances, it is nevertheless susceptible of that interpretation, and the jury might have been led thereby to believe that it was expected to decide whether or not a person of ordinary care and prudence in the position in which the defendant was would have looked to his right, before entering the intersection, to ascertain whether there was any car simultaneously approaching the said intersection.

■■ It is impossible for a disfavored driver to ''look out for and give right of way to vehicles on the right'' without looking to his right at some time before entering the intersection or passing beyond the center of it. This duty of the disfavored driver to look is not measured by the degree of caution used by a person of ordinary care and prudence, but is an absolute duty imposed by law. The place where and the number of times when the disfavored driver shall look to the right, and the manner of his proceeding after so looking, are to be determined by what an ordinarily prudent and careful person would do under like conditions and circumstances: *Knox v. Abrams,* 132 Or. 500 (286 P. 517); *Stryker v. Hastie,* 131 Or. 282 (282 P. 1087).

■ The defendant's car was approaching the intersection of North Central avenue and Fourth street at the left of the car driven by Doty. It is the plaintiff's theory that the Doty car had the right of way; that the accident involving the plaintiff was caused by the defendant's failure to ''look out for and give right of

604

way'' to the Doty car; and that such failure was the proximate cause of the personal injuries suffered by plaintiff and the damage done to his automobile. One of the acts of negligence charged to the defendant is that he failed to keep any lookout for the car driven by Doty, or other traffic on the intersecting streets. It was therefore important to the plaintiff's case that the jury be properly instructed as to the duty imposed upon the defendant to look to his right for approaching cars before entering and attempting to cross the intersection.

■ The wrong impression which the jury might, and undoubtedly did, receive from the foregoing quoted instruction was intensified by another instruction given by the court. After stating to the jury that the right of way which the law gives to the favored driver may be forfeited when such driver enters an intersection at an unlawful rate of speed, the court further charged the jury as follows:

"You are going to have to determine whether or not that was an unlawful rate of speed and I am going to refer to that just a little later in my instructions, as to what rates of speed may be deemed unlawful, but it is sufficient to say now and you will no doubt remember what I say at this time that although Mr. Doty was on Mr. Upp's right and would otherwise have had the right of way in and through the intersection, nevertheless, if he was going at an unlawful rate of speed, he forfeited that right of way and that left the right of way in favor of Mr. Upp as far as that party is concerned, and in that event Mr. Doty would have the right of precedence—I mean Mr. Upp would have the right of way in precedence.''

This instruction, although not excepted to by the plaintiff, should, we believe, be considered in determining whether the plaintiff otherwise had a fair trial. By the instruction to which exception was taken the statu-

tory duty of the defendant to look to his right was converted into the care which the jury might say was that required of an ordinarily prudent person under the circumstances shown. And by the instruction last quoted the defendant is given the right of way over the driver at his right, if such driver enters the intersection at an unlawful rate of speed.

■ The right of way is not transferred from the favored driver to the disfavored, by the favored driver's entering the intersection at an unlawful rate of speed. When that occurs, there is no right of way, and the rules of the common law apply. In other words, each driver is then required to use due care to avoid a collision: *Roellig v. Gear*, 217 Wis. 651 (260 N. W. 232); *Logan v. Schjeldahl*, 66 N. D. 152, 159 (262 N. W. 463, 465); *Cincinnati Street Railway Co. v. Waterman*, 50 Ohio App. 380 (198 N. E. 494); *Wallace v. Papke*, 201 Wis. 285 (229 N. W. 58). Whether or not due care has been used would be determined by what a person of ordinary care and prudence would have done under like circumstances.

■■ One of the instructions requested by the plaintiff related to the right of the plaintiff to recover from this defendant even though the latter's negligence was slight in comparison with that of Doty, whose car struck the plaintiff's automobile. The substance of that requested instruction was given by the court, not in its entirety in any one place but throughout the instructions. The other requested instruction has already been mentioned. It substantially states the law, with the exception that the latter part of it would advise the jury that the duty which was imposed upon the driver at the left when entering an intersection "is somewhat similar to the one exacted of a traveler as he approaches a

railroad crossing''. This is not correct in the connection in which it is found, and if given it would have tended to confuse and mislead the jury. The remainder of the instruction might be better worded to apply to the facts in this case on a retrial.

We are of the opinion, in view of the error committed by the circuit court in the instruction first hereinabove set out, that the judgment should be reversed and the cause remanded for further proceedings not inconsistent with this opinion. It is so ordered.

BEAN, C. J., and LUSK, J., concur.

RAND, J., concurs in the result.